NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAHEEM SPRUELL,<br><br>         Petitioner,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>         Respondent. | Civil Action No.: 15-cv-06992<br><br><br>**OPINION** |

**CECCHI, District Judge.**

Petitioner Raheem Spruell, confined at FCI Ray Brook in Ray Brook, NY, filed the instant Motion to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion") (ECF No. 3), pursuant to 28 U.S.C. § 2255, challenging a sentence imposed by this Court on October 28, 2013 in *United States v. Spruell*, No. 11-cr-0758 ("Crim. Dkt.") (ECF No. 40), after a guilty plea. After considering Respondent's Answer (ECF No. 12), and Petitioner's Traverse (ECF No. 18), and for the reasons stated below, Petitioner's § 2255 Motion is denied and no certificate of appealability shall issue.

## I.    FACTUAL BACKGROUND

On August 7, 2012, a federal grand jury returned a two-count Superseding Indictment that charged Petitioner with: (1) being a felon-in-possession of a firearm, and (2) possession with intent to distribute a controlled substance. (Crim. Dkt., ECF No. 19.)

On June 17, 2013, Petitioner entered a guilty plea to being a felon in possession of a gun (i.e., Count One of the Superseding Indictment). (Crim Dkt., ECF No. 34.) In exchange, the Government moved to dismiss Count Two of the Superseding Indictment (distribution of a controlled substance). (*Id.*) At his plea hearing, Petitioner stated under oath: (1) that his attorney had answered all of Petitioner's questions about the ramifications of pleading guilty, (Crim Dkt., ECF No. 43 at 8); (2) that Petitioner was pleading guilty voluntarily, (*id.* at 8, 19); and (3) that

Petitioner was satisfied with his attorney's representation, (*id.* at 16–17). Petitioner expressly stated under oath that the decision to plead guilty was solely his own, and not anyone else's. (*Id.* at 16.) Petitioner also affirmed his understanding that, by pleading guilty, he had waived his right to a suppression hearing. (*Id.* at 25, 27.)

On October 2, 2013, Petitioner filed a *pro se* motion to withdraw his guilty plea ("Motion to Withdraw"), claiming defense counsel concealed potentially exculpatory witness statements from him, and thus that his plea was not knowing and voluntary. (Crim. Dkt., ECF No. 36 at 2–3.)

During his October 17, 2013 sentencing hearing, the Court conducted oral argument on the Motion to Withdraw, during which defense counsel informed the Court that he neither filed nor advised Petitioner to file the Motion to Withdraw, but that he would weigh in on the matter if requested to by the Court. (Crim. Dkt., ECF No. 45-2 at 3.) Petitioner then asked that he be allowed to argue his Motion and was permitted to do so. (*Id.*) Ultimately, the Court denied the Motion to Withdraw. (*Id.*) Pursuant to the guilty plea, this Court sentenced Petitioner to 110 months' imprisonment for felony possession of a firearm at the October 17, 2013 hearing. (Crim. Dkt., ECF No. 40.)

Petitioner appealed his conviction. (Crim. Dkt., ECF No. 39.) On appeal, one issue Petitioner raised was that counsel was ineffective in assisting him with the Motion to Withdraw, because counsel stood aside while he argued the motion *pro se*. (Crim. Dkt., ECF No. 45-2 at 4.) The Third Circuit considered this argument on the merits and held that counsel was not ineffective because Petitioner could not establish that counsel's conduct prejudiced him; that is, even if counsel affirmatively argued the Motion to Withdraw, this Court would not have allowed Petitioner to withdraw his plea. (*Id.* at 5.) The instant § 2255 Motion followed.

## II.    DISCUSSION

In his § 2255 Motion (ECF No. 3), and his Traverse (ECF No. 18) to the Government's Answer (ECF No. 12), Petitioner asserts two ineffective assistance of counsel ("IAC") grounds for relief: (1) that counsel was ineffective for "failing to locate potential witness whose names [sic] had been provided," who purportedly could have given exculpatory testimony ("Witness-IAC Claim"[1]); and (2) that counsel was ineffective for "fail[ing] to raise Fourth Amendment issues" ("Fourth Amendment-IAC Claim"). (ECF No. 3 at 4–5; ECF No. 1-1 at 1–2[2]; ECF No. 1-3 at 15–34; ECF No. 18 at 3–5.)  The Court finds that these claims do not warrant granting Petitioner § 2255 relief.

### A.    By Virtue of His Guilty Plea, Petitioner Waived the Witness-IAC Claim and the Fourth Amendment-IAC Claim to the Extent Those Claims Do Not Relate to the Knowing and Voluntary Nature of His Plea

When a defendant enters into a counseled, intelligent, and voluntary plea agreement, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see United States v. Whitmer*, 505 F. App'x 167, 173 (3d Cir. 2012).  By pleading guilty, Petitioner not only waived his right to raise any affirmative defenses at trial, he also waived any potential ineffective assistance of counsel claims relating to counsel's failure to discover those defenses

---

[1] Neither Petitioner's October 7, 2015 all-inclusive § 2255 motion (ECF. No. 3 at 4–5), nor his affidavit and supporting brief submitted in support of his September 21, 2015 original § 2255 motion (ECF Nos. 1-1, 1-3), identify the names of these supposed witnesses.  Petitioner's October 30, 2018 traverse to the Government's Answer identifies two witnesses as to whom counsel supposedly "rendered ineffective assistance by failing to pursue the[ir] statement given to police": (1) Taheeda Rogers; and (2) Debra Rodgers. (ECF No. 18 at 2–5.)

[2] Petitioner filed a supporting affidavit and brief with his original § 2255 motion. (ECF Nos. 1-1, 1-3.)  On September 23, 2015, this Court administratively terminated Petitioner's original § 2255 motion for failure to comply with L. Civ. R. 81.2(a).  Petitioner filed his next § 2255 motion on October 7, 2015, but without a supporting affidavit or brief. (ECF No. 3.)  Given that Petitioner submitted this § 2255 Motion *pro se*, the Court will reasonably consider his original affidavit and supporting brief along with his all-inclusive § 2255 motion.

prior to the guilty plea. *See Miller v. Janecka*, 558 F. App'x 800, 803 (10th Cir. 2014) (finding that a claim of inadequate investigation by counsel prior to the plea, which did not challenge the validity of the plea itself, was waived); *Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009) (finding ineffective assistance of counsel claim, alleging counsel's failure to raise an affirmative defense based on the lack of an indictment, waived by guilty plea because it did not challenge the voluntary and intelligent nature of the plea itself); *Lupinacci v. New Jersey*, No. 13-5578, 2015 WL 505880, at *4 (D.N.J. Feb. 6, 2015) (holding that the Supreme Court's decision in *Tollett* barred ineffective assistance of counsel claims that occurred prior to the plea agreement and were not related to the voluntary nature of the plea).

Here, both of Petitioner's claims concern counsel's alleged failures to raise or discover potential defenses prior to the guilty plea. Pursuant to *Tollett*, to the extent those alleged failures do not challenge the knowing and voluntary nature of his guilty plea, Petitioner waived all of his constitutional claims, including his ineffective assistance claim regarding counsel's failure to investigate, when he agreed to plead guilty and admitted to factual guilt. If Petitioner truly believed that he was innocent of his crime, and wished to challenge the indictment at trial to prove his innocence, he could have simply chosen to reject the plea agreement. "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975).

**B.  To the Extent Petitioner's Witness-IAC Claim Challenges the Knowing and Voluntary Nature of His Plea, the Claim Was Already Decided By the Sentencing Court and Affirmed By the Third Circuit As To Potential Witness Debra Rodgers**

To the extent Petitioner's Witness-IAC Claim challenges the knowing and voluntary nature of his plea agreement—i.e., that counsel's failure to investigate resulted in Petitioner accepting a plea agreement without knowing all the facts—that issue was already decided by the sentencing Court and affirmed by the Third Circuit as to potential witness Debra Rodgers:

> [T]he District Court's independent assessment of the witness statement makes it apparent that even with the aid of counsel, the outcome would have been the same. (*See* [Crim. Dkt., ECF No. 44 at 14] ("I don't see how this particular statement [by Debra Rodgers, that she saw Raheem Spruell walking on Ninth Street on the date of the incident] impacts or undermines the credibility of this defendant or contradicts what has already been prepared in the P.S.R.").) Under these circumstances, there is no reason to disturb the District Court's disposition of this case on the basis of an alleged Sixth Amendment violation.

*United States v. Spruell*, 571 F. App'x 100, 102 (3d Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Section 2255 motions "may not be employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (internal citations and quotation marks omitted); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (noting that "issues resolved in a prior direct appeal will not be reviewed again by way of § 2255 motion . . . .").

Here, the central issue raised in Petitioner's Motion to Withdraw was whether counsel was ineffective in advising Petitioner on the guilty plea. Specifically, Petitioner argued that counsel's failure to investigate and locate potential witness Debra Rodgers caused him to enter into a plea agreement erroneously. On that point, the sentencing Court already found that potential witness Debra Rodgers would not have altered the outcome of Petitioner's case. (Crim. Dkt., ECF No. 44 at 14.) The Third Circuit ruled that there was no basis to disturb the sentencing Court's denial of Petitioner's request to withdraw his guilty plea because "the record here makes clear that 'it is extremely unlikely that counsel would have been any more effective than the defendant himself in convincing the district court to exercise its discretion to permit withdrawal of the plea' . . . [E]ven with the aid of counsel [to argue the motion to withdraw], the outcome would have been the same." (Crim. Dkt., ECF No. 45-2 at 5 (citing *United States v. Crowley*, 529 F.2d 1066, 1071 (3d Cir. 1976)).) In short, counsel's plea advice to Petitioner without investigation of Debra Rodgers did not prejudice Petitioner; the outcome of the Motion to Withdraw would have been the same with

or without argument by counsel at the sentencing hearing that relied on Debra Rodgers. Debra Rodgers's supposed testimony was not relevant to or dispositive of the disposition of Petitioner's case. Therefore, to the extent Petitioner's Witness-IAC Claim challenges the knowing and voluntary nature of his plea, the Claim is denied habeas relief because it was already decided by the sentencing Court and affirmed by the Third Circuit as to potential witness Debra Rodgers.

### C. To the Extent Petitioner's Witness-IAC Claim Challenges the Knowing and Voluntary Nature of His Plea, the Claim Does Not, As To Potential Witness Taheeda Rogers, Meet the *Strickland* Test For Ineffective Assistance of Counsel

Petitioner's claim that his attorney did not investigate a purported statement from potential witness Taheeda Rogers (ECF No. 18 at 3[3]) fails on the merits for the following reasons.

A convicted defendant arguing that his conviction or sentence should be vacated due to the incompetence of his counsel must show that his counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). First, a petitioner must demonstrate that "counsel's performance was deficient," which "requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id.*; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). Second, even where a petitioner is able to show that counsel's representation was deficient, the petitioner must still affirmatively demonstrate that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 692–93. To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693. Instead, a petitioner must demonstrate that "there is a reasonable probability that the result of the [case] would have been different absent the deficient

---

[3] As noted *supra* in this Opinion, Petitioner's § 2255 Motion argues that counsel was ineffective for failing to locate "potential witness . . . whose names [sic] had been provided," but the Motion does not identify any witness name(s). (ECF No. 3 at 4.) Petitioner's Traverse specifically names only two such purported witnesses: Taheeda Rogers and Debra Rodgers. (ECF No. 18 at 2–5.)

act or omission." *Hinton v. Alabama,* 134 S. Ct. 1081, 1083 (2014) (per curiam). Particularly relevant to this case is the holding that "[p]rejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said." *D'Amario v. United States,* 403 F. Supp. 2d 361, 372 (D.N.J. 2005) (citing *Duncan v. Morton,* 256 F.3d 189, 201–02 (3d Cir. 2001); *Lewis v. Mazurkiewicz,* 915 F.2d 106, 113 (3d Cir.1990)).

Here, the Court cannot conclude that Petitioner was prejudiced by counsel's failure to pursue a supposed statement from Taheeda Rogers, because he has failed to provide any supporting documentation, in the form of affidavits or otherwise, detailing what Taheeda Rogers would have said. *D'Amario,* 403 F. Supp. 2d at 372. As to Ms. Rogers, Petitioner's Traverse states:

> [I]n the list previously provided to defense counsel, there were several other potential witnesses that had been victims of the home invasion. Specifically, one of the names petitioner provided to counsel was one of a Ms. Taheeda Rogers.
> Petitioner had explained to counsel that two other females residing at 297 South Street, in the city of Newark, had also been victims; in the alternative witnesses to the crime. Moreover, each and every victim whom had lived at that address had in fact been taken to the Newark Police Department where they gave statements to the police.
> Petitioner contends that he had never been provided the statements given to police by the victims of the home invasion. Newark Police officers were fully aware of the fact that Taheeda Rogers had leased the particular apartment, in which she had been sharing with two other females.
> Here, counsel Pedicini rendered ineffective assistance by failing to pursue the statement given to police by Taheeda Rogers in the sense that, (1) if her statement had been properly entered into evidence it could have been used to support the defense's theory that petitioner did not reside at her residence[;] (2) counsel could have presented phone records indicating the call to Taheeda Rogers had placed to [sic] the defendant's phone, prior to his contact with police officers[;] [and] (3) Defense counsel could have used phone records to contradict the police's theory for his being present on the scene at that particular time.

(ECF No. 18 at 3–4.) Other than claiming simply that Taheeda Rogers gave a statement to police and alleging generally that she could have supported his defense, Petitioner does not: describe the

actual contents of what Ms. Rogers supposedly said in her statement to police, identify what she would have said if she was called to testify at trial, explain how her statement to police or her trial testimony would have exculpated him, or set forth how his receipt of her supposed police statement would have affected the outcome of his case.

Thus, Petitioner has not demonstrated that there is a "reasonable probability" that counsel's conduct regarding Taheeda Rogers "altered the outcome in the case." *Strickland*, 466 U.S. at 693. He has not shown a reasonable probability "that the result of the [case] would have been different absent [counsel's conduct at issue]." *Hinton,* 134 S. Ct. at 1083. In short, Petitioner has not shown *Strickland*'s prejudice prong, meaning that his Witness-IAC Claim as to Taheeda Rogers lacks merit. *See United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (citing *Strickland*, 466 U.S. at 697–98) ("failure to satisfy either [*Strickland*] prong defeats an ineffective assistance claim, and . . . it is preferable to avoid passing judgment on counsel's performance when possible").

For these reasons, a hearing is not necessary to address Petitioner's allegations that his attorney failed to pursue the supposed statement. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (denying evidentiary hearing for habeas petitioner's ineffective assistance of counsel claim because the "petition contain[ed] no factual matter regarding *Strickland*'s prejudice prong," and petitioner's "legal theory of self-defense [was] precisely the sort of unadorned legal conclusion that, without supporting factual allegations," the court routinely found insufficient to require a hearing); *United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"); *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir. 1987) (noting that "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing").

### D. To the Extent Petitioner's Fourth Amendment-IAC Claim Challenges the Knowing and Voluntary Nature Of His Plea, Such Claim Is Impermissibly Vague

Petitioner alleges that counsel was ineffective for "failure to raise Fourth Amendment issues." (ECF No. 3 at 5.)  This claim is denied because it is impermissibly vague and non-specific. Habeas Corpus Rule 2(c) provides that petitions must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *See also* Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C. § 2254, p. 471 ("[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error" (internal quotation marks omitted)).  A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the respondent should be ordered to "show cause why the writ should not be granted." 28 U.S.C. § 2243.  The Third Circuit has held that vague and conclusory allegations contained in a petition may be disposed of without further investigation by the district court. *Thomas,* 221 F.3d at 437; *see also United States v. Dawson,* 857 F.2d 923, 928 (3d Cir. 1988) (finding summary dismissal without the filing of an answer warranted when the petition contains vague and conclusory allegations).

Petitioner's vague and non-specific reference to "Fourth Amendment issues" fails to satisfy the requisite particularity necessary for his claim pursuant to the Habeas Corpus Rules.  His § 2255 Motion's failure to particularly identify or describe the specific "Fourth Amendment issues" as to which his counsel was supposedly ineffective leaves the Court unable to ascertain even the nature of his claim in the first instance, let alone any merits of such claims.

Furthermore, even considering Petitioner's brief and affidavit filed in support of his original § 2255 motion (but not submitted in support of his present § 2255 Motion), Ground Two still fails on the merits.  In his original supporting brief, Petitioner alleges that his counsel was ineffective for failing to file "an arguably meritorious motion to suppress . . . illegally obtained evidence . . . [of] the gun and drugs that were discovered as a result of a[n] investigatory stop and subsequent seizure." (ECF No. 1-3 at 15, 18, 19.) (*See also* ECF No. 1-1 at 2 ("Counsel Pedicini

was ineffective for failing to withdraw a suppression motion which petitioner instructed counsel to do.").) Petitioner's brief and affidavit do not demonstrate *Strickland*'s deficient performance or prejudice prongs, as he has not shown that counsel's representation "fell below an objective standard of reasonableness," *see Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005), or that "there is a reasonable probability that the result of the [case] would have been different absent" counsel's failure to file the *pro se* suppression motion, *see Hinton*, 134 S. Ct. at 1083.

First, Petitioner has not demonstrated "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Shedrick*, 493 F.3d at 299. Second, Petitioner has not shown that counsel's performance prejudiced his defense such that Petitioner was deprived of a fair proceeding. *See Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. For example: (1) Petitioner placed the voluntariness of his entry of a guilty plea and his express admission of guilt on the record, (Crim. Dkt., ECF No. 43 at 5–11, 16, 18–19); (2) Petitioner's prior counsel (Pat McMahon) did, in fact, file a suppression motion, which Petitioner wanted withdrawn by plea counsel (Michael Pedicini), because Petitioner believed his own *pro se* motion to be stronger, (*id.* at 13); (3) Mr. Pedicini counseled Petitioner as to the strengths and weaknesses of (a) going to trial with a risky suppression motion and facing 30 years to life, versus (b) accepting a plea, (*id.* at 14); (4) Petitioner acknowledged his satisfaction with Mr. Pedicini's representation of him, (*id.* at 16–17); and (5) Petitioner expressly acknowledged at the hearing his waiver of a suppression hearing by virtue of his guilty plea, in response to the Court's care to inform him of the rights he was relinquishing, (*id.* at 24–25, 27). Under these facts, Petitioner has failed to show *Strickland*'s deficient performance prong.

Second, Petitioner has not shown that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton,* 134 S. Ct. at

1083. Petitioner acknowledges that Mr. McMahon filed a suppression motion (Crim. Dkt., ECF No. 25), but alleges that his counsel was deficient in failing to withdraw that original motion in order to file Petitioner's own *pro se* suppression motion instead. (ECF No. 1-3 at 16.) In his § 2255 Motion, Petitioner claims that his *pro se* motion would have argued that his Fourth Amendment rights were "triggered when[:] (1) the [Newark police] officer informed petitioner that a detective would need to speak to him; (2) the officer grabbed the petitioner by his arm and then escorted the petitioner against his will, to a nearby police vehicle[;] and (3) officers conducted a frisk of petitioner's person, without probable cause to justify why the victim of the crime was being subjected to the same treatment as a possible suspect." (*Id*.) Under Supreme Court precedent, whether a search or seizure is unreasonable in violation of the Fourth Amendment "is whether *in all the circumstances* of [an] on-the-street encounter, [a person's] right to personal security was violated." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (emphasis added). "[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of *circumstances known to the seizing officer*, . . . the search and seizure are valid." *Carroll v. United States*, 267 U.S. 132, 149 (1925) (emphasis added). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Graham-Smith v. Wilkes-Barre Police Dep't*, 739 F. App'x 727, 730 (3d Cir. 2018).

In this case, the Newark Police Incident Report states that officers were dispatched to a robbery in progress involving "black males armed with guns and masks [who] had robbed a narcotics dealer that lives on the first floor apartment." (Crim. Dkt., ECF No. 25 at 23.) When officers arrived and began assessing the scene, Petitioner "advised [an officer] that it was his apartment that was robbed." (*Id.* at 23–24.) The reporting officer wrote in the Incident Report: "Once he advised me that he was the victim, I immediately advised him that the 4th Bureau

Detectives needed to talk to him." (*Id.* at 24.) The officer then escorted Petitioner to a police cruiser and "conducted a pat down search for the officers['] safety before placing him in the rear seat." (*Id.*) At that time, "when [Petitioner] opened his coat, [the reporting officer] immediately noticed the butt of a handgun." (*Id.*) According to the Incident Report, Petitioner began to lean forward to prevent the officer from touching his waist area, at which time the officer pushed Petitioner backwards and secured Petitioner's weapon with the officer's hand. (*Id.*) Once the officers secured the scene, they removed a fully-loaded .38 special revolver and a plastic bag of cocaine from Petitioner's person. The officers then placed Petitioner into handcuffs. (*Id.*)

In such circumstances, Petitioner cannot demonstrate that the result of his case would have been different if counsel had filed his *pro se* suppression motion. Given that: (1) Newark police arrived at the in-progress robbery of the residence of a purported narcotics dealer, and (2) Petitioner voluntarily told them that he was the robbery victim (*id.*), the record strongly suggests that it was not unreasonable for police to express their need to talk with Petitioner. The facts known to police at the time suggested Petitioner was either a victim, a drug dealer, or perhaps both. The facts of that recently-active crime scene also indicate that a pat-down of Petitioner prior to talking with him was reasonable "for the officers['] safety." (*Id.* at 24.) Furthermore, the reporting officer's sighting of a handgun on Petitioner during the pat-down could very well have justified the subsequent search and seizure of Petitioner's person. The involved officers' training, experience, and professional instincts in analogous circumstances could also well support the reasonableness of the search and seizure under the Fourth Amendment. *See Graham-Smith*, 739 F. App'x at 730–31 (quoting *Graham*, 490 U.S. at 396–97) ("The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about

the amount of force that is necessary in a particular situation. Its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight.") (internal quotation marks omitted)). Against this backdrop, Petitioner cannot show that "there is a reasonable probability that the result of the [case] would have been different," *Hinton,* 134 S. Ct. at 1083, if his counsel had filed his *pro se* suppression motion. The merits of his suppression motion arguments were tenuous, at best. Thus, Petitioner has not and cannot demonstrate *Strickland*'s prejudice prong.

Moreover, beyond his *pro se* suppression motion's weaknesses and uncertainties, nothing suggested that Petitioner was not guilty of the crime. (*See* Crim. Dkt., ECF No. 44 at 9–10.) Furthermore, Petitioner testified that: he signed the plea agreement voluntarily; he understood all the elements of the crime to which he was pleading guilty; his decision to plead guilty was entirely his own; he understood that his guilty plea meant there would be no trial; he knew he was waiving his right to a suppression hearing by virtue of his guilty plea; and he understood the penalties pertinent to his guilty plea. (Crim. Dkt., ECF No. 43 at 9, 16, 19, 20, 25, 27, 28.) At the plea hearing, the Court specifically asked Petitioner no less than *five* times whether Petitioner understood that his guilty plea would waive his right to a suppression hearing and that Petitioner intended to so proceed in the case. Petitioner responded affirmatively each time. (*Id.* at 25, 27.) Thus, any allegation on habeas review by Petitioner that his counsel was ineffective for failing to withdraw counsel's suppression motion in order to file and argue Petitioner's *pro se* suppression motion is directly at odds with the facts of record. With Petitioner's expressed intention to plead guilty and thereby waive a suppression hearing, there can be no "reasonable probability that the result of the [case] would have been different," *Hinton*, 134 S. Ct. at 1083, absent counsel's

conduct with respect to the *pro se* suppression motion. Petitioner himself waived disposition of *any* suppression motion by virtue of his intent to plead guilty. In other words, Petitioner has not demonstrated that his or his counsel's suppression motion would have been successful or that a successful motion would have changed the result of his case. In short, Petitioner has failed to demonstrate *Strickland*'s prejudice prong.

Petitioner's above-described failures to demonstrate *Strickland*'s deficient performance and prejudice prongs render Ground Two meritless, even considering the contents of his brief and affidavit supporting his original § 2255 motion. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either [prong] defeats the ineffectiveness claim.").

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable whether this Court is correct in its ruling. No certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's § 2255 Motion, (ECF No. 3), is **DENIED** and no certificate of appealability shall issue. An appropriate Order accompanies this Opinion.

DATED: April 30, 2021

CLAIRE C. CECCHI, U.S.D.J.